UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
In the Matter of the Arbitration Between

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL UNION 210,

                Petitioner,

      --and--

PERRIGO NY, INC.,

                Respondent.
------------------------------X

**PETITION TO DETERMINE WHETHER TO DISQUALIFY COUNSEL IN A LABOR ARBITRATION DUE TO A CONFLICT**

Petitioner International Brotherhood of Teamsters Local Union 210 ("Local Union 210") respectfully petitions the Court to determine whether to disqualify counsel for respondent Perrigo NY, Inc. ("Perrigo) for a conflict in the underlying labor arbitration.

**Parties**

1. Petitioner Local Union 210 is a labor union with approximately 9,000 members whose principal office is located at 55 Broad Street, New York, New York. Local Union 210 represents thousands of employees in various industries affecting commerce.

2. Perrigo manufactures generic, non-prescription pharmaceutical products and is located in the Bronx, New York.

**Jurisdiction and Venue**

3. This Court has jurisdiction of this matter pursuant to Section 301(a) of the National Labor Relations Act, 29 U.S.C. §§ 185 (a) and (c), because Local Union 210 and Perrigo are parties to a collective bargaining agreement. The Court also inherent authority to enforce New

York State's Professional Rules of Conduct, which are applicable in labor arbitration proceedings. Venue is proper in this Court because Local Union 210 maintains its principal office in the Southern District of New York.

### **The Parties' Collective Bargaining Agreement and the Arbitration Clause**

4. Local Union 210 and Perrigo are parties to a collective bargaining agreement that provides:

> All claims, disputes or grievances whatsoever or whatever kind or nature arising between the parties shall be adjusted by the Union and the Employer. If such disputes are not adjusted within twenty (20) days, then the matter shall be resubmitted for arbitration to an arbitrator mutually agreed on, failing which, then to the American Arbitration Association for designation of the Arbitrator.

Collective Bargaining Agreement, Sept. 1, 2012-Aug. 31, 2015, Art. 11.

5. On September 9, 2018, the parties modified Article 11 in a Memorandum of Agreement to clarify that the twenty-day period was actually twenty business days. Memorandum of Agreement, Sept. 9, 2018, Art. 11. The parties also agreed that the company had fifteen business days to conduct an investigation into any employee misconduct, and that at the conclusion of the company's investigation discipline shall be issued within fifteen business days. Id. The parties also agreed that a new collective bargaining agreement that incorporated the terms of the 2012-2015 collective bargaining agreement and the revisions set forth in the 2018 Memorandum of Agreement would be in effective from September 1, 2018 through August 31, 2022.

### **Background**

6. On February 6, 2020, Perrigo terminated three employees who were members of Local Union 210, Leandro Marte ("Marte"), Margarita Madera ("Madera") and Enrico Galicia ("Galicia"), for allegedly backdating and backfilling three entries in a warehouse logbook that

was used to document the cleaning of trailers that did not belong to Perrigo. The trailers contained garbage, such as broken pallets or cardboard, and were usually cleaned within 15-minutes using nothing more than a broom. The alleged misconduct occurred on January 15, 2020. The company did not suffer any losses as the result of the backdating and backfilling of the warehouse logbook.

7. Mr. Marte was employed at Perrigo (and its predecessor) for over 30-years, and Ms. Madera was employed for approximately 10-years. Marte, Madera and Galicia all filed grievances pursuant to the terms of the parties' collective bargaining agreement to contest their terminations. Because the grievances were not resolved and the employees were not restored to their positions at Perrigo, Local Union 210 filed arbitration demands for each of the employees.

8. The arbitrations were scheduled before the American Arbitration Association, with a different arbitrator selected to hear and decide each matter.

A. <u>The Madera Arbitration and the Disclosure of the Potential Conflict by Mr. Horowitz</u>

9. The first case to proceed to arbitration involved Margarita Madera. On August 31, 2021, during the parties' third hearing date in the Madera matter, Perrigo attempted to introduce evidence of alleged additional misconduct that was discovered more than one year after Ms. Madera's termination on February 6, 2020.

10. The additional misconduct involved the numbers of the two trailers that Ms. Madera entered into the warehouse cleaning log. The employer contended that it recently discovered that the trailers were decommissioned before January 15, 2020, so that they could not have been cleaned by Madera on January 15th.

11. The Union objected to the introduction of the alleged additional misconduct on the ground that the conduct did not play any role in Madera's termination and the admission of the

evidence would violate the terms of the parties' collective bargaining agreement because the employer's investigations into misconduct were limited to fifteen business days after the alleged misconduct occurred. It was undisputed that the additional misconduct was discovered over one year after Madera was terminated, and well beyond the fifteen-business day period set forth in the collective bargaining agreement.

12. During a colloquy with the arbitrator in the Madera matter concerning the Union's objection to the introduction of the after acquired evidence, the Union's attorney stated that he wanted to call Perrigo's attorney, John D. Horowitz, as a witness because it appeared that he conducted the investigation into the additional misconduct involving the warehouse logbook. See Exhibit A, Excerpts from Madera Arbitration Transcript, Aug. 31, 2021, at 188-89. In response to the statement by Union's counsel regarding Mr. Horowitz's personal involvement in the investigation, Mr. Horowitz stated, "Of course." Id. at 189. Mr. Horowitz then stated: "I investigated to see whether fraud exists." Id.

13. After Mr. Horowitz conceded that he personally conducted the investigation into the alleged falsified trailer numbers, the Union indicated that it was going to call him as a witness to determine when he discovered the fraud and when he brought it to the Union's attention. The Union argued that Mr. Horowitz had a conflict because he could not be a witness and an attorney in the same matter.

B. The Marte Arbitration and the Second Application to Disqualify Mr. Horowitz

14. While the Madera arbitration was pending, the Marte arbitration was scheduled to begin on October 19, 2021. On October 12, 2021, the Union's attorney filed an *in limine* motion to preclude the after acquired evidence of the decommissioned trailer numbers that was first raised in the Marte arbitration because it violated the terms of the parties' collective bargaining

agreement. The Union argued that the evidence had to be excluded because it was discovered after the 15-business day time limit in the collective bargaining agreement for employer investigations involving alleged misconduct. The Union also argued that in the event that the acquired after evidence was not precluded, Mr. Horowitz should be disqualified as counsel for Perrigo on the ground that he had a conflict of interest because he could not be an attorney for a party and a witness in the same matter. The Union informed the arbitrator that if the after acquired evidence was admitted, it intended to call Mr. Horowitz as a witness to inquire about the details of his investigation into the newly discovered alleged fraud.

15. In its disqualification motion, Local Union 210 argued that Mr. Horowitz's conduct violated Rule 3.7 of New York State's Professional Rules of Conduct, which provides:

> (a) A lawyer shall not act as an advocate before a tribunal in a matter 1in which the lawyer is likely to be a witness on a significant issue of fact unless (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work a substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.

See 22 N.Y.C.R.R. § 1200, Rule 3.7.

16. On October 19, 2021, the Marte arbitration began before a different arbitrator and Local Union 210 made an application to disqualify Mr. Horowitz on the ground that he could not be a witness for the Union on the after acquired misconduct evidence and the attorney for Perrigo in the same proceeding. See Exhibit B, Excerpts from Marte Arbitration Transcript, Oct. 19, 2021, at 9, 14.

17. Local Union 210 also argued that even if the arbitrator did not allow the Union to call Mr. Horowitz as a witness, he should still be disqualified because he was an unsworn

witness. The Union argued that Mr. Horowitz, by his own admission, was the individual who conducted the investigation into the alleged fraud involving the decommissioned trailer numbers. As such, he possessed unique information about a "significant issue of fact" that he could convey to the arbitrator during his questioning of witnesses on direct and cross examination, during his opening statement and in the employer's closing brief. The Union contended that such information would afford Perrigo an unfair advantage in this proceeding because Mr. Horowitz's knowledge will not be available to the Union or subject to any challenge via cross examination. Id. at 15-16.

18.  In response to the Union's disqualification application, Perrigo argued that the arbitrator did not have the authority to issue a disqualification order, and that the Union would have to seek relief in court.  Marte Tr., at 30-31. The arbitrator agreed, and said that the disqualification issue was *ultra vires* and beyond his authority. Id. at 43.

**Petitioner's Claim**

**THE COURT SHOULD CONDUCT A HEARING TO DETERMINE IF COUNSEL FOR RESPONDENT EMPLOYER HAS A CONFLICT UNDER RULE 3.7 OF THE PROFESSIONAL RULES OF CONDUCT AND SHOULD BE DISQUALIFIED FROM REPRESENTING PERRIGO**

18.  District courts have inherent authority to enforce the Professional Rules of Conduct, which are applicable in arbitration proceedings.

19.  Both the arbitrator in the Marte proceeding and the respondent employer concede that the disqualification of an attorney in a labor arbitration for an alleged conflict of interest is a substantive matter for the courts and not for arbitrators to decide.

20.  Local Union 210 respectfully submits that the Court should hold a *Curico*-type proceeding to determine if Mr. Horowitz has a conflict because he personally conducted the investigation into the alleged fraud involving the warehouse logbook and the trailer numbers,

which makes him a potential witness in this matter. The Court should also determine whether Mr. Horowitz would be an unsworn witness even if he did not testify and, in that capacity, would afford Perrigo an unfair advantage in the Marte arbitration because he has personal knowledge about significant issues of fact based on his personal investigation and he would not be subject to cross examination by the Union.

WHEREFORE, for the reasons set forth herein and based on the annexed exhibits, petitioner Local Union 210 respectfully requests that the petition be granted, the Court set down this matter for an evidentiary hearing to determine whether Mr. Horowitz has a conflict of interest and should be disqualified, and that the Court grant such other and further relief as may be just, proper and appropriate.

Dated: New York, New York
October 25, 2021

*Roland Acevedo*
Roland R. Acevedo (8915)
Law Office of Roland R. Acevedo
250 Park Ave, 7th floor
New York, New York 10177
(212) 658-1970 (office)
(917) 670-1777 (cell)
(212) 392-5445 (fax)
Legal@Rracevedolaw.com